# In the United States Court of Federal Claims

No. 21-2342C

(Filed: April 15, 2022)

**NOT FOR PUBLICATION**

|  |  |
|---|---|
| **J. WICKRAMARATNA and TEXEL ENGINEERING LTD,** | ) ) ) ) |
| *Plaintiffs,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*J. Wickramaratna*, Worthing, West Sussex, United Kingdom, *pro se*.

*Jana Moses*, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**SOLOMSON**, **Judge.**

In this case, *pro se* Plaintiff, J. Wickramaratna, asserts a bevy of tort, criminal, and constitutional claims against various parties, including the President of the United States, various members of Congress, former and current government officials, and numerous public figures.

For the reasons explained below, the Court dismisses, *sua sponte*, Plaintiff's complaint for lack of subject-matter jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1), 12(b)(6),[1] and 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC").

---

[1] The Court may dismiss a complaint *sua sponte* pursuant to RCFC 12(b)(1) or RCFC 12(b)(6). *See* discussion *infra* Section III.

## I.   PROCEDURAL HISTORY

On December 27, 2021, Plaintiff, a resident of Worthing, West Sussex, United Kingdom, proceeding *pro se*, filed a complaint against Defendant, the United States, in this Court.  ECF No. 1 ("Compl.").  On December 30, 2021, the Court stayed this action to evaluate it, *sua sponte*, for probable lack of jurisdiction, pursuant to RCFC 12(h)(3), and ordered Plaintiff to pay the outstanding filing fee or file a motion to proceed *in forma pauperis* ("IFP").  ECF No. 6.  On January 11, 2022, Plaintiff filed an IFP motion, ECF No. 7, which this Court granted, ECF No. 8.  On January 18, 2022, Plaintiff filed, by leave of this Court, documents titled "Complaint – Addendum 1" and "Motions – Procedures."  ECF No. 10 ("Add."); ECF No. 11 ("Pl. Mots.").  That same day, Plaintiff submitted an additional document, which the Court rejected, citing "no provision in the rules for the filing of the item."  ECF No. 12.  On January 24, 2022, and March 7, 2022, Plaintiff submitted two additional documents, which the Court also rejected, as the documents were "substantially similar" or "duplicate" filings, respectively, to those already filed.  ECF Nos. 13, 16.

## II.   FACTUAL BACKGROUND[2]

Plaintiff predicates her complaint on a bizarre string of allegations.  For example, she claims "Speaker Nancy Pelosi . . . tr[ied] to claw my eyes out," Kellyanne Conway "use[d] EMF weapons to choke me for 109 days," and "Joe Biden, [Alexandria Ocasio-Cortez], and Nancy Pelosi . . . attacked my whole head in a jealous rage, including chocking [sic], for 17 days and counting."  Compl. at 13, 34.  The Court nevertheless will summarize Plaintiff's complaint and assess whether she states some cognizable claim within this Court's jurisdiction.

Plaintiff alleges she "first connected" with President Trump via Twitter "at the start of the 2016 Republican primaries."  Compl. at 4.  Plaintiff further avers that she "re-connected" with President Trump "about May 2018," and had a romantic relationship with him.  *Id.*  Plaintiff asserts that this alleged romantic relationship with the forty-fifth president drew the ire of "a rogue group of people."[3]  *Id.* at 5–6, 9, 13–16, 19, 21, 23, 30, 32.  According to Plaintiff, her relationship with President Trump threatened these individuals, as they wanted President Trump to remain solely romantically involved with Representative Alexandria Ocasio-Cortez.  *Id.* at 5–6, 13–15,

---

[2] For the purposes of evaluating jurisdiction, the facts alleged in Plaintiff's complaint and other filings are assumed to be true and do not constitute factual findings by the Court.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

[3] These "rogue" persons include employees of the Department of State, Department of Justice, and Department of Defense, members of Congress, and President Joe Biden, among others.  Compl. at 1, 35–36.

2

18, 28, 30, 32; Add. ¶ 20.  Plaintiff asserts that former Secretary of State Mike Pompeo contacted the Prime Ministers of the United Kingdom and Australia, and the North Korean dictator, Kim Jong-un, in a strategic effort to thwart her relationship with President Trump.  Compl. at 15–16, 17.  Plaintiff further alleges that because of the animosity against her, Mike Pompeo blocked the United States from funding Iran, the World Bank, and the World Health Organization.  *Id.* at 16, 24.

In her 39-page complaint and 26-page addendum, Plaintiff alleges defamation, employment discrimination, infringement of constitutional rights, and violations of the Federal Tort Claims Act and the Alien Tort Claims Act.  Compl. at 1–4, 6, 7, 14–16, 19, 23 (alleging "constitutional deprivation of [her] liberty," violations of the First and Fifth Amendment, and "[v]iolation of [c]onstitutional [r]ights under 42 USC § 1983"); Add. ¶¶ 10, 17, 20.  In addition, she claims to be the victim of a laundry list of criminal acts, including assault, stalking, torture, grievous bodily harm, conspiracy to murder, bribery, blackmail, fraud, human rights abuse, "criminal harassment," "[m]odern-day slavery," "breaking and entering," theft, and "abuse of office."  Compl. at 1, 4, 6–9, 14–17, 20, 29–31, 33–35; Add. ¶¶ 14, 19, 20, 22, 23.  She contends that "rogue Federal agents" are hurting her and her company, Texel Engineering Ltd, by conspiring to harm her work and health, and that these actors are attempting to murder her.  Compl. at 1–2, 13–17, 23, 28, 33, 35.  Aside from being "hunted, stalked, threatened, criminally harassed, maligned, and slandered day in day out" by various public figures including Mick Mulvaney, Mike Pompeo, Lindsey Graham, and Alexandria Ocasio-Cortez, *id.* at 15, Plaintiff alleges that these individuals interfered with her medical treatment by preventing doctors from treating her and hindering her access to prescription medication, *id.* at 21–22, 24, 28.  Plaintiff also claims breach of contract "under the Tucker Act."  *Id.* at 2–3.  According to Plaintiff, "rogue Federal persons" have undermined several of her company's bids for defense contracts with the United Kingdom to which the United States was a party.  *Id.* at 2–3, 7–8, 11, 17–19; Add. ¶ 23.

To remedy her alleged injuries, Plaintiff seeks the following monetary damages: (1) $2 million for "healthcare and security," Compl. at 11; Pl. Mots. at 3;[4] (2) "$1 million per month . . . for pain and suffering and health deterioration," Compl. at 12; and (3) $55.96 billion for "damages done by" an exhaustive list of individuals, *id.* at 36.

Plaintiff also seeks the following equitable and injunctive relief:  (1) appointment as "a non-financial guardian to watch over" former President Trump's "well-being and freedom," Compl. at 37; (2) "all actions imprisoning and restricting [President Trump's] freedom to be removed," Pl. Mots. at 3; (3) "all persons . . . restricting and imprisoning [President Trump] . . . to be removed from office . . . [and] Trump premises," *id.* at 3–4;

---

[4] In her "Motions – Procedures" filing, Plaintiff changes this request to two million *pounds*.  Pl. Mots. at 3.  The Court, however, assumes that Plaintiff seeks monetary relief in the form of dollars, as it is the currency cited in her original complaint.

3

(4) "all . . . actions and communications in the name of Donald J[.] Trump which are being forced on [him to] be stopped," *id.*; (5) President Trump's "adult children be appointed to be joint guardians of his person, properties, and wealth, alongside [him]," *id.* at 4; (6) "an interim injunction and a permanent restraining order stopping harassment, stalking, menacing, privacy and human rights violation[s], and 'devastation' of [Plaintiff's] business and work," Compl. at 12; and (7) "the removal of the following staff and officers from office":  (i) "Staff in the Office of the 45th President"; (ii) Kellyanne Conway; (iii) President Joe Biden; (iv) Rep. Nancy Pelosi; (v) Rep. Alexandria Ocasio-Cortez; (vi) Sen. Bernie Sanders; (vii) Sen. Chuck Schumer; (viii) Rep. Lindsay Graham; and (ix) "White House press secretary for Joe Biden," *id.* at 12, 35–36.

In addition, Plaintiff requests the following relief by way of either judicial intervention or monetary damages:  (1) to award her the "UK MOD contracts," or, in the alternative, "$2 billion in compensation," Compl. at 11; (2) "a 7-year appointment as the CTO of Trump Organisation . . . and an introduction to his literary agent," or, in the alternative, "$19 million in compensation," *id.* at 12; (3) "that the courts order the Trump administration to . . . charge . . . [Alexandria] Ocasio-Cortez," or, in the alternative, "$1 million per every year for up to 10 years," *id.*

Finally, Plaintiff moves to proceed under seal, to proceed under a pseudonym, to participate in court proceedings via teleconference, for assistance with travel documents, and for pro bono representation.  Compl. at 3, 10, 11; Pl. Mots. at 1–2, 5.

### III.   JURISDICTION AND STANDARD OF REVIEW

Plaintiff is proceeding *pro se*, and this Court holds a *pro se* plaintiff's pleadings to "less stringent standards."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "even *pro se* plaintiffs must persuade the Court that jurisdictional requirements have been met."  *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) (citing *Bernard v. United States*, 59 Fed. Cl. 497, 499, *aff'd,* 98 F. App'x 860 (Fed. Cir. 2004)).  "It is well-established that the plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence."  *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).  In the absence of subject-matter jurisdiction, the Court "must dismiss the claim."  *See Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (citing RCFC 12(h)(3)).

"The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the Court authority to render judgment on certain monetary claims against the United States."  *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)).  The Tucker Act provides this Court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions."

*Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). "[A] plaintiff must [also] identify a separate source of substantive law that creates the right to money damages." *Id.* (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *Mitchell*, 463 U.S. at 216. With respect to "money-mandating" claims, the plaintiff must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967).

To proceed with a complaint, a litigant must allege *plausible* facts to state a claim within this Court's jurisdiction. *Perry v. United States*, 149 Fed. Cl. 1, 11 (2020) (citing *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354–55 (Fed. Cir. 2018)) (discussing the pleading standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021). Under this standard, *pro se* litigants must allege "plausible" facts sufficient to satisfy both the requirements of subject-matter jurisdiction and the necessary elements of a claim as a matter of law for which relief may be granted. *See id.*[5]

*Pro se* or not, the Court has a duty to consider whether a complaint satisfies the jurisdictional prerequisites and the pleading requirements of this Court. Accordingly, the Court evaluates *sua sponte* whether it possesses jurisdiction over Plaintiff's claims, pursuant to RCFC 12(h)(3), and whether Plaintiff has sufficiently stated a claim upon which relief can be granted. *See Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*."); *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) ("The [Court of Federal Claims] may dismiss *sua sponte* under [RCFC] 12(b)(6), provided that the pleadings sufficiently evince a basis for that action."); *see also Res. Recycling Corp. v.*

---

[5] Where, as here, a foreign national is suing the United States, he or she faces an additional prerequisite before bringing suit in this Court. Foreign nationals may seek recourse in this Court only if their country of origin "accords to citizens of the United States the right to prosecute claims against their government in its courts." 28 U.S.C. § 2502. This Court's predecessor, the United States Court of Claims, found that the United States has reciprocity with Great Britain. *Brodie v. United States*, 62 Ct. Cl. 29, 46 (1926) ("The true test is . . . whether the doors of British courts are open to American citizens for the prosecution of 'claims' against the Crown"); *see also Carlisle v. United States*, 83 U.S. 147, 156 (1872) (relying on *United States v. O'Keefe*, 78 U.S. 178, 184 (1870), to affirm British reciprocity); *Pollen v. United States*, 85 Ct. Cl. 673, 681–82 (1937) (discussing *Brodie* and proper application of the reciprocity statute). The Court, however, has not recently addressed whether the United Kingdom "accords to citizens of the United States the right to prosecute claims against" the Crown. 28 U.S.C. § 2502. Regardless, the Court need not address this issue because, as discussed *infra*, Plaintiff's complaint must be dismissed for lack of subject-matter jurisdiction and failure to state a claim for which relief may be granted.

*United States*, 56 Fed. Cl. 612, 615 (2003) ("[A] motion to dismiss for lack of subject matter jurisdiction under [RCFC] 12(b)(1)[] may be raised by the court *sua sponte* at any time.").

## IV. PLAINTIFF'S CLAIMS ARE ALL EITHER OUTSIDE THIS COURT'S JURISDICTION OR MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AS A MATTER OF LAW UPON WHICH RELIEF CAN BE GRANTED

### A. Plaintiff's Claims Against Parties Other Than the United States Are Not Within This Court's Jurisdiction

The Tucker Act limits this Court's jurisdiction to claims against the United States. *See Double Lion Uchet Express Tr. v. United States*, 149 Fed. Cl. 415, 420 (2020) ("[I]n the Court of Federal Claims, 'the *only* proper defendant . . . is the United States, not its officers, nor any other individual.'" (alteration in original) (quoting *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003))). Accordingly, this Court has no jurisdiction to hear Plaintiff's claims against individual federal employees. *See Pikulin v. United States*, 97 Fed. Cl. 71, 75 (2011) (barring "claims against individual federal government officials"). Furthermore, to the extent that Plaintiff asserts claims against private parties, this Court also has no jurisdiction. *See Moore v. Pub. Defs. Off.*, 76 Fed. Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations."). Thus, this Court must dismiss Plaintiff's complaint in its entirety for lack of subject-matter jurisdiction because it states no cause of action against the United States.

### B. Plaintiff's Tort Claims Are Not Within This Court's Jurisdiction

Concerning Plaintiff's tort claims, "[t]he plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (citing 28 U.S.C. § 149l(a)(l)); *see also LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995) ("The short answer is that these are tort claims, over which the Court of Federal Claims has no jurisdiction."); *Rohland v. United States*, 136 Fed. Cl. 55, 65 (2018) ("[J]urisdiction over tort claims against the federal government lies exclusively in federal district courts."); *Del Rio v. United States*, 87 Fed. Cl. 536, 540 (2009) (barring claims under the Federal Tort Claims Act); *Zhao v. United States*, 91 Fed. Cl. 95, 100 n.6 (2010) (recognizing that the Court lacks jurisdiction to hear Alien Tort Claims Act claims). Plaintiff's tort claims, thus, must be dismissed.

### C. Plaintiff's Criminal Claims Are Not Within This Court's Jurisdiction

To the extent that Plaintiff seeks to hold the United States liable for criminal acts such as assault, stalking, torture, conspiracy to murder, blackmail, human rights abuse, "modern-day slavery," and theft, this Court also lacks jurisdiction over such claims. *See Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) (noting that the Court of

6

Federal Claims "has no jurisdiction over criminal matters generally" (citing 28 U.S.C. § 1491)). Furthermore, this Court may not "adjudicate any claims whatsoever under the federal criminal code." *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994). Therefore, Plaintiff's claims concerning criminal acts must be dismissed.

### D. Plaintiff's Constitutional Claims Are Not Within This Court's Jurisdiction

Plaintiff's constitutional claims also fail to satisfy this Court's jurisdictional requirements. The Court does not have subject-matter jurisdiction to decide due process claims, actions arising under 42 U.S.C. § 1983, or claims based on the First Amendment. *See Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (finding that the Court of Federal Claims has no jurisdiction to hear due process claims under the Fifth Amendment); *Jefferson v. United States*, 104 Fed. Cl. 81, 89 (2012) ("[T]he court does not have subject matter jurisdiction over actions arising under sections of the Civil Rights Acts, including 42 U.S.C. § 1983, § 1985, and § 1988."); *United States v. Connolly*, 716 F.2d 882, 886–87 (Fed. Cir. 1983) (finding no jurisdiction based on First Amendment). Plaintiff's constitutional claims must, therefore, be dismissed.

### E. Plaintiff's Complaint Fails Either to State a Contract Claim Within This Court's Jurisdiction or to State a Claim as a Matter of Law Upon Which Relief Can Be Granted

*First*, as a threshold matter, Plaintiff alleges that she is suing not only on behalf of herself, but also on behalf of her company, Texel Engineering Ltd. Compl. at 1, 3; *see also* Add. ¶ 23. However, given that Plaintiff is not an attorney and is proceeding *pro se*, Plaintiff "may not represent a corporation, entity, or any other person in proceedings before this court." RCFC 83.1(a)(3). Thus, Plaintiff may not represent her company,[6] and the breach of contract claim, to the extent asserted on behalf of Texel Engineering Ltd, must be dismissed. *See Brewer v. United States*, 150 Fed. Cl. 248, 250 (2020) ("Violation of [RCFC 83.1(a)(3)] is grounds for dismissal of a complaint for lack of prosecution pursuant to RCFC 41(b)."); *Indus. Supplies, LLC v. United States*, 144 Fed. Cl. 290, 293 (2019) (prohibiting the owner of a limited liability company from representing the company on a *pro se* basis).

*Second*, although breach of contract claims often fall within this Court's jurisdiction, the "[d]etermination of [this Court's] jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's

---

[6] Texel Engineering Ltd is a private limited company. *See Texel Engineering Ltd*, Companies House, https://find-and-update.company-information.service.gov.uk/company/10540959 (last visited Mar. 16, 2022) (identifying Texel Engineering Ltd as a "[p]rivate limited [c]ompany"). A "private limited company" is a type of limited liability company in the United Kingdom. *See* 3 Andrew F. Simpson, *World Online Business Law* § 45:43 (2010).

claim." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998).  Here, Plaintiff has not alleged any "plausible" facts supporting her conclusory allegation of breach of contract.  Accordingly, the Court lacks subject-matter jurisdiction over her contract claim.

*Third*, mere legal conclusions employing the right words to create a putative jurisdictional hook are pretextual and cannot create jurisdiction where none exists.  *See Lewis v. United States*, 70 F.3d 597, 603 (Fed. Cir. 1995) ("[A] complaint alleging that the plaintiff has a right to relief on a ground as to which the court has jurisdiction raises a question within the court's subject matter jurisdiction as long as the asserted basis of jurisdiction is not pretextual, *i.e.*, as long as the jurisdictional ground asserted in the complaint does not 'appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction.'" (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913))).  Thus, Plaintiff "cannot invoke this Court's jurisdiction to adjudicate [her] grievances merely by invoking Tucker Act language, such as 'contract.'"  *Perry*, 149 Fed. Cl. at 17.  Additionally, several times throughout Plaintiff's complaint, Plaintiff contradicts her purported assertion that there was a contract.  In particular, Plaintiff represents that her company, Texel Engineering Ltd, *placed a bid* but failed to secure a government contract.  Compl. at 3, 17–19.  Considering the contradictory nature of her complaint, and the lack of any factual evidence supporting the existence of a contract with the government, *see* RCFC 9(k) ("In pleading a claim founded on a contract . . . a party must identify the substantive provisions of the contract . . . on which the party relies."), it is clear that Plaintiff alleges breach of contract merely as a ruse to access jurisdiction.[7]

*Fourth*, even if this Court had subject-matter jurisdiction over Plaintiff's breach of contract claim, the Court finds that Plaintiff fails to state a claim as a matter of law for which relief may be granted.  *See Perry*, 149 Fed. Cl. at 10–11, 20 (holding that in addition to the Court's dismissing *pro se* plaintiff's contract claim pursuant to RCFC 12(b)(1), to protect judicial resources, the Court should also dismiss the claim pursuant to RCFC 12(b)(6), thereby implicating *res judicata*).  For a complaint to survive a dismissal pursuant

---

[7] In that regard, Plaintiff compares her circumstances to that of Amazon Web Services, Inc.  Specifically, Plaintiff alleges that her "AI Engineering system bid" was "reject[ed]" in "the same way" that the "Amazon Pentagon Jedi bid" was "blocked."  Compl. at 18; *cf. Amazon Web Servs., Inc. v. United States*, 153 Fed. Cl. 602, 604 (2021) (describing plaintiff's claim that "President Trump repeatedly made clear to the highest echelons of [the DOD], including those directly responsible for overseeing the JEDI award, his desire that [plaintiff] not receive the JEDI Contract" and "that [the DOD] . . . succumb[ed] to presidential pressure to steer the JEDI Contract away from [plaintiff]" (alteration in original) (citation omitted)).  To the extent Plaintiff intends to assert a claim pursuant to 28 U.S.C. § 1491(b), however, Plaintiff alleges no plausible facts supporting the assertion that a particular bid or proposal was rejected due to arbitrary, capricious, or unlawful government action.

to RCFC 12(b)(6), the complaint must contain "plausible *factual* assertions," as conclusory *legal* statements are insufficient. *Id*. at 19–20. Furthermore, the "factual assertions [must], if true, . . . entitle the plaintiff to the claimed relief as a matter of law." *Id*. at 20 (citing *Welty v. United States*, 926 F.3d 1319, 1323 (Fed. Cir. 2019)). "[A] complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "Put differently, pursuant to RCFC 12(b)(6), a plaintiff must plead facts demonstrating *all* of the elements of a contract with the government — namely, 'a mutual intent to contract, including an offer, an acceptance, and consideration' exchanged with a government official having actual authority to contract." *Perry*, 149 Fed. Cl. at 20 (quoting *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997)).

Here, Plaintiff has failed to allege any facts even suggesting the possibility that she had either an express or an implied-in-fact contract with the government. She merely asserts a legal conclusion — that there was a contract — without alleging even a modicum of plausible facts indicating the requisite elements of a contract or that a government official had any authority to contract with her company. *See Perry*, 149 Fed. Cl. at 20. Thus, Plaintiff's complaint "fails to 'elevate a claim for relief to the realm of plausibility' as required by RCFC 12(b)(6)." *Id*. (quoting *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012)). Having failed to allege any requisite facts to support her claim, Plaintiff fails to state a claim as a matter of law for which relief may be granted.

## V.     PLAINTIFF'S REMAINING CLAIMS ARE FRIVOLOUS

Although the Court generally assumes the truth of the allegations in a complaint, *see Twombly*, 550 U.S. at 555, the Court "is required to dismiss a frivolous complaint from a litigant who is proceeding *in forma pauperis*," *Taylor v. United States*, 568 F. App'x 890, 891 (Fed. Cir. 2014) (citing 28 U.S.C. § 1915(e)(2)(B)). A complaint is frivolous "if the alleged facts present 'fantastic' or 'delusional' scenarios." *Perry*, 149 Fed. Cl. at 36 (quoting *Taylor*, 568 F. App'x at 891).

In her complaint, Plaintiff chronicles a fantastical tale where President Trump, Alexandria Ocasio-Cortez, and herself are engaged in a love triangle. Compl. at 4–5, 7, 13; Add. ¶ 20. The particularities of her allegations — the wide-ranging allegations arising in tort, constitutional, and criminal law — all revolve around the same absurd supposition: federal employees, including members of the Department of State, Department of Justice, and Congress are all involved in some bizarre conspiracy to obstruct her romantic relationship with President Trump. *See* Compl. at 8–9, 13–15, 19–20, 26, 28, 30, 32. Plaintiff's allegations are frivolous because "the factual allegations asserted are so unbelievable that there is no need for an evidentiary hearing to determine

Case 1:21-cv-02342-MHS   Document 17   Filed 04/15/22   Page 10 of 10

their veracity." *Taylor*, 568 F. App'x at 891.[8] Given that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), the Court holds that Plaintiff's complaint must be dismissed.

## VI. THIS COURT LACKS JURISDICTION TO ENTERTAIN PLAINTIFF'S REQUESTS FOR EQUITABLE AND INJUNCTIVE RELIEF

In addition to her monetary claims, Plaintiff seeks equitable and injunctive relief. This Court generally does not have the power to grant such relief outside of nonmonetary claims pursuant to the Contract Disputes Act or procurement challenges pursuant to 28 U.S.C. § 1491(b). *See Treviño v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) (holding that "the [Court of Federal Claims] does not have jurisdiction over . . . claims for injunctive relief"); *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act does not provide independent jurisdiction over . . . claims for equitable relief." (citing *United States v. King*, 395 U.S. 1, 2–3 (1969))). Therefore, to the extent that Plaintiff seeks judicial intervention by ways other than monetary damages, her complaint must be dismissed.

## VII. CONCLUSION

For the reasons explained above, the Court hereby **DISMISSES** Plaintiff's complaint. The Clerk shall enter **JUDGMENT** for the government. Furthermore, the Court **DISMISSES AS MOOT** Plaintiff's motion to proceed under seal, Plaintiff's motion to proceed under a pseudonym, Plaintiff's motion to participate in court proceedings via teleconference, Plaintiff's motion for assistance with travel documents, and Plaintiff's motion for pro bono representation.

**IT IS SO ORDERED.**

s/ Matthew H. Solomson
**Matthew H. Solomson**
**Judge**

---

[8] Plaintiff's prior filings in federal district court also weigh against the veracity of her accusations. *See Grant v. United States*, 129 Fed. Cl. 790, 793 (2017) (frivolous claim warranted dismissal, considering that plaintiff "brought strikingly similar claims in other federal courts that were found to be frivolous and dismissed"). Prior to filing suit in this Court, Plaintiff filed similar fantastical claims in the United States District Court for the District of Columbia, which were subsequently dismissed. *See, e.g.*, Compl., *Wright v. Trump*, No. 19–3353 (D.D.C. Nov. 4, 2019), ECF No. 1; Order at 3, *Wright v. Trump*, No. 21–93 (D.D.C. June 29, 2021), ECF No. 1 (noting Plaintiff's "vague and fantastical accusations").

10